CHAS. A. ELLIS, Respondent, v. LILLIAN JOHNSON, Appellant.

In the Springfield Court of Appeals. February 27, 1924.

1. **EQUITY: Custody of Child: Jurisdiction in Equity.** Jurisdiction of court of equity to award custody of child, in suit brought as suit in equity, rather than by *habeas corpus* or in divorce proceedings, is well founded.

2. **DIVORCE: Custody of Children, as Between Parents and Others.** In awarding custody of child of divorced parents, welfare of the child is the paramount consideration, and as between parents and other persons, presumption will be indulged that welfare of the child will be best served by placing it in the care and custody of one or the other of its parents, unless it be shown that the parents are incapable in some way of doing for the child what its best interests demand.

3. ————: **Custody of Children, as Between Parents.** In a contest between parents for the custody of a child, court should give primary consideration to such things as age and needs of the child, character of the parents, their ability to meet the requirements of the child; welfare of the child being the primary consideration.

4. ————: **Custody of Child: Award of Custody to Grandparents Held Unjustified.** Where either of divorced parents were able morally and financially to care for child, award of child for one year to its grandparents, who were not in court, and did not agree to assume

(272)

responsibility for its care and training, though willing to take it, was unjustified.

5. ———: ———: **Evidence Held to Justify Award of Child to Mother.** Evidence considered, and *held* to justify award of a child of divorced parents to the mother.

*Headnotes 1. Infants, 31 C. J., Section 12; Parent and Child, 29 Cyc., p. 1602; 2. Parent and Child, 29 Cyc., pp. 1590, 1594; 3. Parent and Child, 29 Cyc., pp. 1590, 1596, 1597; 4. Parent and Child, 29 Cyc., p. 1590; 5. Parent and Child, 29 Cyc., p. 1604.

Appeal from the Circuit Court of Greene County.—*Hon. Guy D. Kirby,* Judge.

REVERSED AND REMANDED (*with directions*).

*Wright & Ruffin,* of Springfield, for appellant.

(1) The circuit court had no jurisdiction to entertain a bill in equity to determine to whom the custody of the child should be awarded. The guardianship of minors is vested in courts of probate in this State. (2) When a court has acted in a divorce proceeding and decreed the divorce of the parents, the court retains jurisdiction of the child, and the child becomes a ward of the court until it arrives at its majority, and jurisdiction to award the custody of such child vested in that court to the exclusion of all others. R. S. 1919, sec. 1812; In re Gladys Morgan, 117 Mo. 249; Meridith v. Krauthoff, 191 Mo. App. 149, 165; Robinson v. Robinson, 268 Mo. 703, 708. (3) The rights of the parents are equal in all proceedings involving the custody and control of a minor child, and the best interests of the child shall be observed by the court. Laws of 1913, p. 93; R. S. 1919, sec. 1814. (4) The welfare of the child is the primal consideration. (Numerous authorities.) Ex parte Archer, 253 S. W. 1095. (5) The presumption is that the best welfare of the child is to be with its parents. Ex parte Archer, 253 S. W. 1095; Orey v. Moller, 142 Mo. App. 579; In re Bontelle, 124 Mo. App. 450. (6) This presumption in

218 Mo. App.—18.

favor of the mother cannot be overcome except by a
strong showing that she is an unfit person to have the
child. Absent such showing defendant herein should
prevail. Ex parte Archer, 253 S. W. 1095. The plaintiff
herein failed to show that he was a fit person to have the
child, and there is no evidence in this record upon which
to base a finding that the defendant, mother, is unfit.
There is no evidence reflecting upon her character or that
of her present husband or their home, or the environs of
their home. (7) Parental affection should weigh most
heavily and should take precedence over the condition of
the grandparents, and the affection held by the grand-
parents and the maiden aunt for the child. Neither the
grandfather nor the maiden aunt testified and neither
expressed a willingness to assume the responsibility and
the trust in caring for the child. The grandmother tes-
tified and in so doing displayed a most unfriendly at-
titude toward the defendant as did the plaintiff. The
affection of the defendant for her child is most manifest,
and she has made two trips to Springfield from California
for the sole purpose of securing the custody of her child
through the medium of the courts.

*Sam M. Wear* and *Arch A. Johnson,* of Springfield,
for respondent.

The Superior Court of Los Angeles County, Cali-
fornia, had no jurisdiction to award the custody of the
child in the divorce proceeding on service had by pub-
lication, the defendant in that suit and the child being
residents of Missouri. 19 Corpus Juris., sec. 831, p. 367;
De la Montanya v. De la Montanya, 32 L. R. A., 82. A
California case. "The custody of a child is always a
proper subject of chancery jurisdiction. The benefit of
the infant is the foundation of the jurisdiction. The in-
stitution of any proceeding affecting his person is suf-
ficient to make him a ward of the court." 22 Cyc., 519.
To the same effect: Pomroy's Equity (3 Ed.), secs.
1303, 1304 and 1305; Clark's Equity (Mo. Edition), sec.

458; Bispham's Principles of Equity (6 Ed.), sec. 546; Schouler's Domestic Relations (5 Ed.), sec. 248; Huke v. Huke, 44 Mo. App. 308. In this country the doctrine is universal that the courts in their sound discretion and when the interests of the child require it, will take children from both parents, and place the care and custody of them elsewhere. The welfare of the child should determine its custody. Schouler's Domestic Relations (5 Ed.), sec. 248; Bispham's Principles of Equity (6 Ed.), sec. 546.

COX, P. J.—Suit in equity to secure judgment awarding the permanent custody of a minor child to plaintiff. The answer concludes with a prayer that the custody of the child be awarded defendant. The court heard the evidence and then rendered judgment awarding the custody of the child to J. B. Ellis and Eliza T. Ellis, grandparents of the child, for one year and reserved jurisdiction to make further orders at the end of or during said period of one year as to the care and custody of said child. From this judgment defendant appealed.

The case is unusual in that it is a suit in equity rather than by *habeas corpus* or proceeding in the divorce court to secure an award of the custody of a minor child. The jurisdiction of the court to proceed in this form of action is not questioned in this case and seems to be well founded. [22 Cyc. 519.]

Plaintiff and defendant were married May 7, 1914, in the State of California. The child involved in this litigation was born there. When he was about two years old the father came to Greene county, Missouri, where his parents reside and brought the child with him. He did not return to California but kept the child here with his parents. Later he filed in Greene county, Missouri, a suit for divorce against his wife, the mother of this child. She appeared to that suit and filed an answer and cross-bill. The plaintiff then went back to California but did not take the child with him. A reconciliation between the parties was effected and he dismissed his suit

for divorce and lived with his wife about one month when he again left and came back to Missouri. The child remained with his parents in Missouri all this time. Later the wife, the defendant in this case, filed suit in California for divorce from plaintiff. Service was had by publication. A decree in her favor was entered and she was also awarded the custody of this child. Later, in 1921, she instituted *habeas corpus* proceedings in the circuit court of Greene county, Missouri, to secure the custody of the child. In that proceeding a judgment was entered awarding her the custody of the child for one year from July 15, 1921, then the father was to have the child for one year and the custody of the child should alternate for one year each thereafter. The defendant took the child back to California and in October, 1921, she married R. H. Johnson, and continued her residence there with him and this child, which constituted the family. In July, 1922, the plaintiff went to California to secure the child to keep it for the next year as the judgment of the court in Greene county, Missouri, had directed. The defendant refused to allow him to take the child and instituted a suit in California, in the same court where she had obtained a decree of divorce from her husband, in which she asked that court to award her the permanent custody of the child. This plaintiff, who was defendant in that action, was personally served with process and appeared in that court and filed an answer. An order was made in that court, on stipulation of the parties and their counsel, that the custody of the child should remain with the mother pending the suit and the father be permitted to visit the child from 10 a. m. to noon on each Tuesday. An order was also made by the court enjoining and restraining the father from removing the child from the State of California or the jurisdiction of that court pending further orders of the court. Plaintiff visited the child on Tuesday of each week as the court had directed he might, and on one of these visits he took the child to a store, ostensibly to make some purchases for it, but, instead of returning the child to its mother, he ran away

with it and brought it back to his parents in Greene county, Missouri. Soon after his arrival in Missouri, he filed a motion in the circuit court of Greene county to modify the judgment entered in the *habeas corpus* proceeding in that court by which the custody of the child was to alternate between the parents, so that the permanent custody should be awarded to him. The mother appeared for the purpose of defending her rights in that proceeding. The father then dismissed that proceeding and filed this suit and secured personal service upon the defendant. This case was tried resulting in a judgment as heretofore stated.

This is one of that class of cases in which the principles of law involved are very simple and yet, to reach a correct conclusion is most difficult. We are directed by the settled rule of law to seek only the welfare of the child and in that search to proceed upon the well known and recognized premise that, unless the contrary be shown, the presumption will be indulged that the welfare of the child will be best served by placing it in the care and custody of one or the other of its parents. Following this course, the court, in a contest between a parent and some other person, whether a relative or not, will award the custody of a minor child to the parent unless it be shown that the parent is incapable in some way of doing for the child what its best interests demand. In controversies between a parent and one not so related to the child, the judgment of the court may, and often does, rest solely on the legal presumption that the welfare of the child will be best promoted by awarding its custody to the parent; but in a contest between parents, both of whom stand equal before the law, the legal presumption above alluded to is wanting and the court must pass to a consideration of the testimony in each case without the aid of any presumption in favor of either parent. The age of the child and its needs, the character of the parents, their ability, financially and otherwise, to meet the requirements of the child in its physical, mental and moral development in such a way as to insure it becom-

ing a law-abiding and patriotic citizen and a useful member of society are the matters to which the court should give primary consideration in attempting to reach a correct conclusion in each case. The difficulties which are in the way of a court feeling certain that its judgment is right must be apparent to all, for no one can, with certainty, divine the future. The court can only do what at the time seems to promise best results. In the evidence in this case some aspersions are sought to be cast upon the character of both these parents, but we are of the opinion that both are of good character. Both are financially able to feed, clothe and educate the child. Both are interested in and no doubt will do what they can to see that the moral training of the child will be properly attended to. In that condition of the testimony, there can be no justification for the order of the trial court in this case by which the custody of this child was awarded for one year to its grandparents. The plaintiff did not appeal from that judgment and we presume he is satisfied for the reason that his home is also with the grandparents of the child. The court, however, should have awarded the custody to one or the other of the parents. The grandparents were not in court, neither did they appear, as far as this record shows, before the court and agree to assume the responsibility for the care and training of this child. The evidence shows their willingness for the child to remain in their home but that is not a sufficient basis for the court's action in taking the custody of the child from both parents and awarding it to them.

To determine to which parent the custody of this child should be awarded is a problem not easy of solution. On the one hand it is suggested that the mother is in contempt of the circuit court of Greene county, Missouri, in refusing to allow the father to take the child at the end of the first year as the court had directed, and in instituting a proceeding in the California court by which she sought to secure a judgment in that court awarding the permanent custody of the child to her. Had

she merely refused to deliver the child to its father without instituting any proceeding in court, her action would have been subject to severe criticism and condemnation, but in this case she acted upon the advise of counsel and sought the relief she wanted through the channels of the courts. On the other hand, attention is called to the fact that the father, after having appeared in the court in California and subjected himself to the jurisdiction of that court, abducted the child in violation of the court's order and, possibly, in violation of the criminal law of that State. There can be no excuse or justification for his conduct. The mother proceeded within her legal rights while the father proceeded in total disregard of the law of the State and the order of the court where the child was at the time located. We are not, however, disposed to rest our conclusion in this case solely on the action of either parent in that particular. We prefer to assume that the conduct of both was prompted by their love for the child and to yield to the thought that "love covers a multitude of sins" and let it pass at that. The evidence discloses that after the marriage of defendant with her present husband, the life of the child was pleasant in the home. Mr. Johnson was kind to the child and their relations most agreeable and, should the child be returned to its mother, there is no reason to fear that this same relation will not continue. There is nothing to indicate the possibility of a change in the future in the make-up of that family or the pleasant relations existing between its members. If the child be left with the father, it will, of course, be kept in the home of plaintiff's parents where the family consists of the plaintiff, his father and mother, a brother and a maiden sister. The relations there are also pleasant. There may be a possibility of the father re-marrying and moving to another home. The same thing may occur as to the brother and the maiden sister. The chief care of the child at this time in the home of its grandparents is with the maiden sister of plaintiff. As to the continuance of the present membership of the two families there is no likelihood of

change in the family of the mother while there may be change in the family of the father. As already said, both parents are of good character and financially able to properly care for the child. The child is of tender years, being but eight years of age, and it is well known by all men that no other love is quite so tender, no other solicitude quite so deep, no other devotion quite so enduring as that of a mother. Generally, the love, solicitude and devotion of a mother cannot be replaced by another and is worth more to a child of tender years than all other things combined and it should not be deprived of the necessary and wholesome influences which spring from these characteristics of a mother if it can reasonably be avoided. True, for a large part of this child's young life, it has been kept away from its mother, but that was no fault of hers and there is no reason to believe that the same influences which are exercised over the ordinary child by its mother will not accrue to the benefit of this child, if awarded to its mother.

The judgment of the circuit court will be reversed and the cause remanded with directions to set aside the order of that court awarding the custody of the child, John Dawson Ellis, to its grandparents, J. B. Ellis and Eliza T. Ellis, and to enter judgment awarding the permanent custody of said child to its mother, Lillian Johnson, without restrictions, except that the father shall be permitted to visit the child at all reasonable times.

*Farrington,* and *Bradley, JJ.,* concur.